### Estes v. Bowman Brothers, et al.

(Decided November 22, 1918.)

### Appeal from Madison Circuit Court.

Judicial Sales—Liens—Equity Jurisdiction.—Where there are three debts, owned by different persons, secured by valid liens on real estate, two of which have priority over the third, one of the two prior liens priority of the other, and the junior lien debt only is due, Civil Code, section 694, subsection 3, as amended by act of 1916 (Acts General Assembly 1916, page 656), forbids the decretal sale of the encumbered property to pay all the lien debts, and a court of equity is therefore without jurisdiction to adjudge its sale for that purpose.  It may, however, in such state of case, at the suit of the junior lien holder, adjudge the sale of the property to pay his debt, subject to the prior liens.

BURNAM & BURNAM for appellant.

G. MURRY SMITH for appellees.

R. H. CROOKE and BOWMAN BROS. for purchaser.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing.

By this appeal we are asked to review two judgments of the Madison circuit court. The first judgment compelled the sale of an acre of land as the property of appellant, A. M. Estes, in satisfaction of certain lien debts, one of $232.92 in favor of the appellees, Bowman Brothers; others aggregating $195.00, with interest from January 1st, 1918, in favor of John A. Young. The second judgment confirmed the sale of the land made by the master commissioner under the first judgment and directed its conveyance to the purchaser, Mert Coates, by deed from the commissioner.

It appears from the record that the appellant, A. M. Estes, in 1917, purchased of John A. Young, the acre of land in question at the price of $200.00 Appellant paid at the time $5.00 of the purchase money and for the remainder executed to Young his three notes; the first for $45.00, payable January 1, 1918; the second for $75.00, payable January 1, 1919; the third for $75.00, payable January 1, 1920, all bearing six per cent interest from date. The contract of sale was evidenced by a title bond executed and delivered by Young to appellant, whereby the former covenanted to convey the latter the acre of land by deed of general warranty, upon his paying the three notes mentioned, all secured by a vendor's lien retained in the title bond. The acre of ground thus purchased of Young by appellant is part of a twenty-three acre tract upon which Young and wife, had theretofore executed a mortgage to one W. D. Sanders as security for a note of $1,100.00 owed him by Young. This note was unpaid and the mortgage was in full force when appellant purchased the acre of ground of Young, which was covered by the mortgage.

After his purchase of the land from Young, appellant erected thereon a blacksmith shop, and in so doing became indebted for material used in its erection, to the appellees, Bowman Brothers, in the sum of $232.92. By the required statutory steps, appellees obtained a materialman's lien upon appellant's blacksmith shop and acre of ground, and the latter, having failed to pay their debt, they brought this action to recover it, to that end seeking a personal judgment against appellant and the enforcement of their lien against the property. Young and Sanders were joined with appellants as defendants and called upon to assert their respective liens. The wives of Estes and Young were not made parties. Appellant

answered admitting $220.00 of appellees' debt, but deny-
ing the remainder; also admitting their lien, but denying
their right to its enforcement because of the existence on
the lot and shop of the prior and superior liens of Young
and Sanders; the amount and character of each of which
liens and the immaturity of the debts secured by them re-
spectively being set forth by proper allegations.    The
answer also alleged the indivisibility of the lot and that
appellees were not entitled to the enforcement of their
lien before the maturity in full of the prior lien debts of
Young and Sanders.

Young and Sanders filed answers to the petition, each
containing in substance the same allegations regarding
the nature and amounts, respectively, of their debts, their
immaturity, the execution and existence of their re-
spective mortgages and the priority of same over the lien
of appellees, set forth in the answer of appellant.    Each
answer further alleged the unwillingness of both Young
and Sanders to have their mortgage liens enforced.    The
answers of Young and Sanders were never controverted
by reply or otherwise.    After a reference of the case to
the master commissioner and the filing of his report as
to the liens and questions of priority the circuit court
gave appellees a personal judgment against appellant for
their debt, enforced their lien and directed a sale of the
acre of ground and blacksmith shop for the payment of
their lien debt; further adjudging, however, that out of
the proceeds of sale the master commissioner first pay all
costs, next the lien debts of Young and then the lien debt
of appellees.    All the defendants excepted to the judg-
ment, but neither Young nor Sanders appears on the
record as appellant.

Following the sale of the lot, of which the appellee
Coates became the purchaser, appellant filed exceptions
to its confirmation upon various grounds, but all were
overruled.    As in our view of the case the first judgment
must be reversed because of the want of jurisdiction in
the court to render it, it will be unnecessary to consider the
objections urged to the confirmation of the sale which must
be set aside as invalid.    It will be observed that the judg-
ment of sale ignores altogether the debt and lien of San-
ders, which is admittedly the first in priority on the lot
adjudged to be sold, notwithstanding which he is excluded
from receiving any part of the proceeds arising from its
sale; nor does the judgment even provide for the preser-

vation of his lien on the lot. Being first in priority he must first be paid. But on yet another ground the judgment is radically erroneous. It violates the provisions of section 694, subsection 3, Civil Code, as amended by an act of the legislature passed in 1916. (Acts General Assembly 1916, page 656.) Section 3 of the act is as follows:

"The plaintiff in an action to enforce a lien on real property shall state in his petition the liens, if any, which are held thereon by others, and make the holders defendants; and no sale of the property shall be ordered by the court prejudicial to the rights of the holders of any of the liens, and when it appears from the petition or otherwise, that several debts are secured by one lien, or by liens of equal rank, and they are all due at the commencement of the action, or become so before the judgment, the court shall order the sale for the *pro rata* satisfaction of all of them, but if, in such case, the debts be owned by different persons and be not all due, the court shall not order a sale of the property until they all mature. If all such liens be held by the same party, the court may order the sale of enough of the property to pay the debts then due, unless it appears that it is not susceptible of advantageous division, or that, for some other reason, the sale would cause a sacrifice thereof, or seriously prejudice the interests of the defendants, but the holder of a prior lien may enforce the same when the debt thereby secured is due, notwithstanding the existence of inferior liens, whether the debts secured thereby are due or not; and the holder of an inferior lien, when the debt thereby secured is due, may enforce the same by a sale of the land subject to a prior lien or liens thereon, where the debt or debts secured thereby are not yet due. Provided that the provisions of this act shall not apply to any liens now of record."

Before the enactment of this amendment, lands covered by prior liens of equal rank could not be sold, where the prior liens were not due. Under the amendment, however, the sale may be made subject to the prior liens. This question was passed on in Fisher v. Evans, 175 Ky. 300. In the opinion we said:

"Such a sale is forbidden by subsection 3 of section 694, *supra*. The junior mortgagee must of necessity, actually or constructively, have knowledge of the senior mortgage lien, and the rights of the senior mortgagee

thereunder, at the time the junior mortgage lien is created. The junior mortgagee only acquires such rights in the property as do not affect the rights acquired by the senior mortgagee, under his mortgage. The prior lien not having matured, a sale outright of any portion of the land would prejudice the rights of the prior lien holder, as his lien embraces and covers every portion of the land. Although the land might be divisible, a sale of no part of it could be had free from encumbrance without prejudice to the prior lien holder, whose debt is not due, because it would be impossible to foretell how much of the encumbered lands would be necessary to satisfy the prior lien at its maturity.''

The circuit court was without jurisdiction to sell the land as directed by its judgment. The judgment not only completely disregards the prior lien debt of Sanders, but it enforces the lien of Young when the debts it secures are not due, thereby precipitating the maturity of his debts and lien without his consent and over the protest of appellant, the debtor. The mandatory provisions of the Code cannot thus be violated. The wives of Estes and Young should have been made parties to the action in order to divest them of their potential right of dower in the land, but the failure to make them parties would not of itself compel the reversal of the judgment. The purchaser of the land under the judgment, if it were valid, could only take title to the land subject to such potential or inchoate right of dower. The motion of appellees to dismiss the appeal is overruled, because of the filing by appellant in this court of the supplemental record, the absence of which gave good grounds for the motion. But as the additional record was filed after the motion was made, the costs on the motion must be paid by appellant.

The judgments, except so much of the first as is a judgment *in personam* against appellant for appellees' debt, are reversed and the circuit court directed to set them aside; and also the sale of the land, leaving the parties to take such steps in the case as will enable the court to properly and legally determine their respective rights.